Ms. Watson, can we call our first case please? 15-3625, April versus Jamal Charles. Will counsel on Charles please approach? Please tell us who you are and who you represent. Rebecca Cohen of the Office of the State Appellate Defender on behalf of Jamal Charles. Good morning, Your Honors. My name is Assistant State Attorney Smriti Didwani on behalf of the people of Illinois. Okay, could you speak up a little bit and tell me? Smriti Didwani, Assistant State Attorney on behalf of the people of Illinois. Okay, great. And how much time would you like? I'd like 15 minutes to argue and then I'd like to reserve five minutes for rebuttal. All right. 15 minutes? All right. And Ms. Cohen, would you like to proceed? May it please the Court. I'm going to focus my argument today on Issues 1 and 2 from my brief. The State conceded that it was error to admit the prior AUUW conviction, which was void under Aguilar for purposes of impeachment. So what we have left to talk about is whether the State sufficiently proved the unreasonable doubt that Mr. Charles had a firearm and whether the admission of the void conviction was harmless. As to the sufficiency argument, the only evidence that Mr. Charles had a firearm was the complainant's testimony. And her testimony as to whether or not he had a firearm was weak. There was no gun recovered. No one else testified that they saw... Well, the gun wasn't recovered because they didn't get him for months after, until months after. That's correct. He was not arrested until several months after the incident. But still, the burden is on the State to prove that Mr. Charles had a firearm. And her testimony was that Mr. Charles pointed a gun at her and told her to get into the car. She testified that she saw the barrel of the gun where the bullets come out, and that it was black, but it was dark out. And she only saw the object for a few moments. He pointed it at her. How does he get her into the car if he doesn't have a gun? Four in the morning when she's waiting for the bus to go to the L, to go downtown, to go to work. How does he get her in the car without a gun? She subjectively believed that he had a gun, and she acted in a way because she thought he had a gun. But that's not enough under the law to prove that he had a firearm. When the legislature adopted... The victim here had to say, hey, let me hold on to this and see how heavy it is, and let me examine it closely so that I can say for sure this is a gun. Haven't we sustained convictions on the testimony of a single eyewitness that the defendant had a gun? Yes. There are a number of cases. Well, there are cases where the court has said that they've relied on one witness, but in most of those cases there are more than one witness who testifies to seeing a gun. All right, but in this case we have one witness. And the witness doesn't have to be an expert in guns, correct? She needs to give us more than what she's given us here. Why is that? Because when the legislature adopted the language in 2000 to differentiate between committing a crime with a firearm versus committing a crime with a less dangerous weapon, they created a technical definition of firearm. A firearm has to be any device which is designed to expel a projectile by the action of the expansion of gas. She said. She saw the barrel where the bullets come out. Right, but she doesn't tell us how big it is. Does it matter? Yeah, it could have been a BB gun. Well, BB guns are about the same size as guns. So, I mean, there was a recent decision when Judge Posner had one of them, a picture. Yeah, that's correct. Okay, so pictures are Posner. So, you know, the size isn't the question. I mean, is that the issue, whether you have to testify to the size of what they have? That would help. Well, it would help, but we don't have that. So I don't see how it helps. This is sort of similar to drug cases, where you can't just assume that a powder is a controlled substance. You have to prove that it actually is a controlled substance, because there is a technical definition. And the reason we have this technical definition is because the penalties are great. He got 30 extra years for having this firearm. He would still be subject to a Class X felony without the firearm, with a range of penalties. Isn't your argument about it could have been a BB gun, or maybe it was some other toy weapon, isn't that just a version of saying the trial court should have indulged a presumption in favor of the defendant's innocence? It should have viewed the evidence and said, well, he could be innocent of possessing a weapon. And the law is the opposite. The court doesn't have to indulge every inference in favor of the defendant. That's correct. There is a presumption of innocence at the trial level. And you say it could have been a BB gun, not a real weapon, a BB gun. Isn't that just another version of that argument that the court should have drawn a presumption that would have resulted in a not guilty? I don't think so. The burden is on the state to prove the elements of the offense. In this case, one of the elements of the offense is to prove that he had a firearm. There's a technical definition of firearm, and here we have very little bit of evidence about her, about what she saw. And the state didn't ask her further questions, are you sure it was a firearm? What difference would that have made under your argument? She says, I'm sure it was a firearm. You still say, all she said was, he pointed something at me that looked like a gun. It wouldn't have been enough, right? It wouldn't have made any difference if somebody was standing next to her and saw the same thing and said, yeah, he had a gun. Because what do we know? That scenario is very similar to Toy, which was said by the state. And again, two people did say there was a gun, but they didn't describe it sufficiently to meet the definition. And so I would argue that Toy is wrongly decided. The Illinois Supreme Court recently decided a case right, which I think should help in this case. In Wright, the Illinois Supreme Court said that one witness's testimony is enough to prove that an object is a firearm. But in that case, the testimony was much more specific than the testimony we have here. The witness testified that the object was a semi-automatic, he had experience firing such guns, he was 100% sure it was an actual firearm. Plus there was another witness who also identified it as a 9mm pistol. So in that scenario, there's much more specific information about the firearm than we have here. All we have here is that it was black, the barrel where the bullets came out was pointed at her. And what we know from Ross is that her subjective belief that something was a firearm is not enough to prove that it was a firearm. I will move on to my second issue, which is the Boyd conviction. As the state conceded, it was error to admit Mr. Charles' prior AUW conviction, which was Boyd under Aguilar for purposes of impeachment. So the only issue we have to discuss is whether or not the admission was harmless. And here it's pretty clear that it was not harmless. There was a firearm, it was close, and the state... Why is it close? Just because he said, she said? Yeah, and as I argued it with regard to issue one, she was not very specific about the object. She said it was a black with a barrel where the bullets coming out pointed at her. Other than that, we have no evidence. So what sort of specificity do you think would be required of a rape victim regarding the kind of gun, type of gun, brand of gun, how many bullets it holds, automatic, semi-automatic? Those things would help, because that would help us identify the technical, if it meets the technical definition that the legislature set out. It sounds like you're arguing for a foundation requirement that might be something appropriate for an expert. But you're talking about a woman who has a gun pointed at her and has, you know, then is assaulted. And there has to be foundation for that beyond he had a gun and I saw the barrel? Well, I think when you have the stiff penalties that are connected with proving a firearm, then yes, you have to prove more than that. As to the harmlessness of the Boyd conviction, repeatedly through closing argument, the state referred to Mr. Charles as a convicted felon. And that highlighted the fact that he had this prior weapons conviction charge or conviction. And... You think that if the state had not been able to characterize him as a convicted felon, he would have been acquitted on this evidence? I think it's clear that the state, that the jury relied on this evidence. Because they asked to look at... Because that's the last thing they asked for before they convicted him. They asked to see the Exhibit 16 regarding the gun conviction. Sounds like you're speculating a little bit. How were you able to read the jury's mind and say that, well, that's why they convicted him, because they asked for that? Well, that was the last thing they asked for before they convicted him. So, what if it was the first thing? More dramatic, I suppose. Yes. It indicates that the jury relied on it, because they quickly convicted him after seeing the weapons, the certified copy conviction. Plus, the court expressly removed all references to the weapon from the conviction. But when the jury... Yes, they called it a weapon charge, right? A weapon charge, but they didn't say it was a gun. No, but I think probably in the parlance of a layperson, when you hear the word weapon, you probably think a gun. Probably, but they confirmed it when they asked for the gun conviction and it was given to them. If they hadn't done that, would you think it would have been a different case? If they hadn't asked for the gun conviction. If they hadn't done that. No, I think it still is problematic that his prior AGUW conviction was admitted against him at trial. It was void under Aguilar, as if it didn't exist. It was constitutional conduct. Defense counsel objected before trial, but then should have filed the motion to vacate, filed the 214-01 conviction. If counsel had done that, it would not have existed. It could not have been admitted at trial, and the jury could not have relied on it. So I think either way, but the note shows that they did rely on it, and it made a difference. They asked for it, and received it, and it made a difference. If your honors have no further questions, I'll reserve the rest for the panel. All right, thank you. Ms. Dudwania? Good morning, your honors. My name is Assistant State's Attorney, Smriti Dudwania, on behalf of the people of Illinois. May it please the Court. Before I address the three issues of the case, the people want this Court to know that this was not a closely balanced case. You're going to have to yell a little bit for some of us. This was not a closely balanced case. The victim's testimony in our case was credible and unpaged. Okay, well, let's go to the issue of the description of the gun. Okay, so all we have is it's black, and she looked at the barrel, right? Is there anything else that we have? Your Honor, in Wright and in Washington, the Supreme Court has held that a single eyewitness testimony that is credible, unimpeached, is enough to show the trial of fact that it's reasonable for the victim to believe that it was a firearm. So you're saying, as opposed to your opponent, that as long as the Court found somebody who believes her credible, then that is enough, even though in those cases there was more testimony than what we have here? Definitely, Your Honor, because in Wright and in Washington, they never put a burden on the victim or any witness that you must have expert opinion or expert knowledge about firearms. If you believe that, and you saw objectively, that it was black in color, it had a barrel, it was pointed at her a few feet away, it was enough to believe for this victim that this was a firearm when she was assaulted. Issue 1, the people prove beyond a reasonable doubt that the defendant was armed with a firearm by the unequivocal, unimpeached, credible, and believable testimony of the victim. The victim described the gun as black in color, and it had a barrel. At trial, the defense's theory had been that there was no gun. And now, at the appellate level, the defense is arguing that it was not a real gun. So the jury had to decide, at a minimum, who they believed, because the defendant testified. He said, I didn't have a gun. She got into my car when I asked her. She says, he pointed a gun at me. So it's a credibility determination. Right? It was not a closely balanced case. Her testimony has been corroborated by her sister, her father, her operations supervisor, the work log that showed that she didn't show up that day because of an emergency, and the DNA evidence. But you're not disagreeing with Justice Mason that it was a question of credibility between what she said, and you're saying there's other testimony to substantiate that, and what he said was, I didn't have a gun at all. So you agree it was a question of credibility? In the state's opinion, it was not a question of credibility because it was not a closely balanced case. The victim's testimony was corroborated. I'm talking about credibility with regard to whether there was a gun in that. What she saw. Your Honor, he said that there was no gun, but she says that there was. And it was credible and unimpeached. So her testimony was more credible than the defendant's. So in the state's opinion, it's completely inappropriate to raise a new defense at appeal. Moreover, this is unsupported speculation on behalf of the defense to suggest that it was not a real gun. Especially because there was no evidence presented at trial to suggest that the firearm was fake, or a toy, or a BB gun. So you're saying that the defendant never raised at any time at trial that it was not anything but a real gun. They just said that I didn't have a gun. They did not say that it was fake, or a BB gun, or it was a toy gun. Their defense was like there was no gun. There was no gun. But now this is a new defense theory. Never was raised below that it wasn't a real gun. Now they're saying, well, there may have been a gun, but it wasn't real. That's an important thing if they didn't bring it up below at any time. They did not bring it below at any time. It was never presented to the jury. Their only belief was no gun. So they've changed their tune on appeal. And now they've conceded, well, there was something, but it wasn't a real gun. Exactly. Yes, Your Honor. Our Supreme Court has held in Wright and in Washington that a single eyewitness's unequivocal testimony could be enough for a trial of fact to reasonably conclude that the defendant possessed a real gun. Your Honor, I would like to move on to issue number two. We agree that the AUW conviction should not have been admitted into evidence. However, it was rejected because of the overwhelming evidence against him. Well, the jury had to decide whether they believed the victim who said he had a gun or the defendant who said he didn't have a gun. And the state introduces his prior AUW conviction, writes out that it was a firearm. But the jury immediately, or at some point during its deliberations, asks for the quote-unquote gun conviction. Doesn't that make it more likely that the jury thought, well, he's had a gun before. He was convicted of having a gun before. He probably had a gun this time. Your Honor, that's pure speculation on defense's part. We don't know why they asked. Other 14 exhibits went back with the jury that included photographs, advisory forms, work schedules, sexual assault kit, buckle swab of the defendant. And the one evidence did not go. If they are going to speculate that based on the jury asking for that one piece of evidence the defendant was convicted, the people can speculate that maybe the jury wanted to be thorough. We don't know. We absolutely have no idea why they asked for it. And, Your Honor, there was something else you mentioned that because he's done it in the past, he could have done it now. The state never mentioned that throughout the trial, that because he had done a crime with a weapon in the past. Of course. It was admitted only for impeachment, just to show that he was a convicted felon. Exactly. But NG is pretty black and white on this issue, that it can't be used for any purpose because it's void ab initio. And so you now have a void ab initio conviction being introduced at the defendant's trial. And lo and behold, the jury says, can we see that void conviction? Your Honor, it's again, it's speculation. We don't know why they asked. 14 other exhibits went back with the jury and maybe they just wanted to be thorough. I don't know why they asked. Did the other exhibits beforehand? The 14 exhibits did go back beforehand. Beforehand, yes. Yes, Your Honor. Were there any other exhibits that did not go back, counting the weapon conviction? Just the weapon conviction did not go back. But if you add in the weapon conviction and the other documents that came before, are those all the documents? Yes, Your Honor. So the one thing that they were lacking was this impeachment. And then they asked for that. So then they had everything. Yes, Your Honor. The victim described her horrendous experience in detail, and that's why the jury believed her. She remembered all the details of a great assault that she suffered. She mentioned there was loud music in the car. She remembered the defendant's smell of her saliva on her body, still smelling it in the hospital. When she was assaulted, the defendant told her, I want you to hold my head and come. After the kidnapping and the sexual assault, the defendant told the victim that she was going to be his girlfriend. The defense counsel in his closing said that the victim had desires that day. And because she went through her desires, she reached the train station late. And because of reaching the train station late, she was going to be at work late. So she decided to make up a story of getting sexually assaulted. On the other hand, we have the defendant's testimony when he testified that the victim willingly got in his car, Twelfth Ranger's car, when she's on her way to work, dressed in her work clothes, drove with him to his aunt's house, ate food with him, took her clothes off first, and then had consensual sex. And after having sex with him, when he's dropping her off at the train station, she decides to ask for $150 or $175. Essentially, he's again calling her a prostitute. What is astounding is that the first defense alleged that it was consensual sex and then the victim is a prostitute. And third, that she was feeling so windy on that particular day, in that particular morning, that she just wanted to have the defendant because he said, hey girl, to her. It's just ridiculous. Why would the victim make up such an extreme story of getting sexually assaulted when she could have just called work and said, hey, I'm going to be late today. I'll be sick. I'm not coming in today. Instead, why would the victim spend hours at the hospital submitting to an evidence-collecting kit, giving blood samples, calling her father, her sister, her operations supervisor, telling them that she was raped, talking to police officers, doctors, and nurses that she was assaulted. Getting in front of a jury, complete strangers, and telling them that she was sexually assaulted because that's what happened, because she was sexually assaulted, because the defendant had a gun with him that day. At the end of the day, your honors, AUW conviction was not prejudicial to the defendant because his defense was ridiculous, and it had absolutely no corroboration, and the jury would have reached the same verdict on guilty because the victim's story was corroborated by his sister, father, operations supervisor, the work log, and the DNA evidence. Your honors, in conclusion, taking all these factors into consideration, the people ask this court to affirm defendant's conviction. If you have no more questions. Ms. Cohen. Ms. Cohen. Just briefly, your honors. So the issue in this case really comes down to whether the evidence was sufficient regarding whether Mr. Charles had a firearm, and the complainant's testimony with regard to that element, which the state had the burden of proving beyond a reasonable doubt, was weak. As Justice Hyman pointed out, basically she testified that the object had a barrel, and it was black, and that's not enough to prove the technical definition of firearm under the statute. I guess I'm not understanding the technical definition of a firearm. It seems to me like the defendant is arguing that the victim has to have some rudimentary knowledge of firearms, and to be able to say whether it's a semi-automatic, automatic, whether it's a pistol, whether it's a Luger, that you have to be able to specifically identify the particular weapon in order to sustain the state's burden of proof. And I don't think I've ever seen an appellate court or a Supreme Court case that says that. That's correct. There's no case citing that, but we do have the statute which has a specific definition of firearm, and there are other ways to, if the definition of firearm is not met, it doesn't mean that he's innocent, there are other crimes for which he could be convicted. It's just the firearm piece, which has a technical definition, that the State has not proven. What about Ms. Dedwania's argument that this is a new theory on appeal, that in the trial court, Mr. Charles never argued that this could have been a toy gun, he just said, I didn't have a gun, period. And so the jury was never asked to determine, was this a real gun, was it a toy gun? But now on appeal he says it could have been a toy gun. Is this a new theory? I think the argument below was that he did not have a gun. But the burden is still on the State to prove that he had a firearm. But you're not contesting that there was not an issue at trial. So whatever evidence they put in, they did put in evidence. Your argument was he didn't have a gun, so that wasn't something that was contested. Well, I mean, it was contested in that he said he didn't have a gun. That was the only way it was contested. That's correct. And he decided that that was his choice to proceed that way, and having proceeded that way, why should we make this argument on appeal when you haven't made it before the trial court, before the jury? Well, on appeal, we can challenge whether the State has met its case below. And in this case, the evidence with regard to whether it was a firearm is weak. So that's what we're raising on appeal. With regard to whether the void AUW conviction was harmless, I cited two cases in my opening brief, Pruitt and McCoy, which raised similar issues to the issue raised here. By admitting that prior AUW conviction, the State is basically telling the jury he had a gun before. It's likely that he had a gun again here. The instruction said it was to be used for purposes of impeachment, and that's also true in Pruitt and McCoy. They were instructed properly that it should be used for impeachment, but still the court found error because the prior convictions were so similar to the issues in the case. Like here, we have a prior AUW conviction, and the central issue is, did he have a firearm? And it's likely that the jury thought that because he previously had a firearm, he had it again. Was the jury told any other information about that earlier use of the weapon that he was out at 4 in the morning looking for his future girlfriend and happened to have a gun on him then? Anything like that? No. They were just told that he had a prior AUW conviction. What's more egregious in this case is that that was constitutional conduct that it should not have been admitted at all, whereas the prior convictions in McCoy and Pruitt were valid convictions. So this court can rely on those cases to show that the prior admission, the admission of this AUW conviction was not harmless. So we ask that you reverse these convictions and remand for resentencing pursuant to Issue 1, grant of a new trial pursuant to Issue 2, or remand for resentencing pursuant to Issue 3. Thank you. Thank you both for your arguments and your briefs. We will take the case under advisement.